**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

DAVID GASKINS,                     :
                                   : Civil Action No. 09-1982 (WJM)
          Plaintiff,               :
                                   :
                                   :
          v.                       :  **OPINION**
                                   :
17 OFFICERS, et al.,               :
                                   :
          Defendants.              :

**APPEARANCES:**

    DAVID GASKINS, Plaintiff pro se
    #9987
    Sussex County Correctional Facility
    41 High Street
    Newton, New Jersey 07860

**MARTINI**, District Judge

    Plaintiff, David Gaskins, a state inmate currently confined at the Sussex County Correctional Facility in Newton, New Jersey, seeks to bring this action in forma pauperis. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to

state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed at this time.

## I.   BACKGROUND

Plaintiff, David Gaskins ("Gaskins"), brings this civil action, pursuant to 42 U.S.C. § 1983, against seventeen (17) police officers and detectives as follows: Detective Michael Richards; Detective Tom Tosti; Det. Neil Casey; Trooper Eric Edelman, K-9; Trooper Helmut Bisl, K-9; Det. John Lindquist; Officer Kevin Cole; Lieutenant George Kaley; Sgt. Dean Coppolelia; Lt. Mitch Elliott; Det. Mike Yanko; Sgt. Mike Tidaback; Officer Krista Tromper; Det. Joe Danwibaus; Det. Jason Garrigan; Det. Nick Elmo; and Det. Ed Galinski.  (Complaint, Caption and ¶ 4b).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Gaskin alleges that the above officers violated his constitutional rights due to their involvement and participation in actions of "entrapment, malicious prosecution, bias, racial profiling, prejudice, racial discrimination, emotional distress, doctrine of obligation, moral turpitude and slander by the media."  (Compl., ¶ 4b).  Gaskins alleges that he was arrested on

June 12, 2008.  He admits that his arrest was based on the result of a Sussex County Narcotics Task Force investigation involving information from several confidential informants.  The informants told the police officers and detectives that drugs, namely heroin and crack, were being sold from an apartment in Newton, New Jersey.  The informants identified the individuals who lived in the apartment and/or sold drugs from the apartment.  A description of one of the suspects was given that fit the description of plaintiff.  These informants also participated in drug purchases arranged by the Task Force for evidence and support to obtain a search warrant of the apartment.  The apartment was under surveillance by the police during this investigation and on the day of Gaskins' arrest.  (See July 9, 2008 Transcript of Probable Cause Hearing, and the Affidavit of Det. N. Elmo of the Sussex County Prosecutor's Office in support of request for a search warrant issued by the Honorable N. Peter Conforti, J.S.C., on June 12, 2008, attached as exhibits to plaintiff's Complaint).

 Gaskins contends that there was no probable cause to arrest him on June 12, 2008.  He claims that no drugs were found on his person at the time he was arrested.  A narrative of the Supplementary Investigation Report prepared by Det. N. Elmo states, however:

> On the above date [June 12, 2008] at approximately 12:00 p.m., I assisted other members of the Sussex County

>Narcotics Task Force and Newton PD with the surveillance of 160 Spring Street Apt. 1b.  The initial investigation report said "D", later identified as David Gaskins, is picked up by an unknown black male in a gold Nissan Altima with NJ registration VYH32S around 1:00 pm behind 160 Spring Street to go to Paterson to purchase drugs.  The initial report also said Gaskins would return to 160 Spring Street around dinner time.  The members of Narcotics task Force, Newton PD, and I setup surveillance in the area of 160 Spring Street in Newton.
>
>At approximately 1:15 pm, I met my CI [confidential informant] at a predetermined location.  I asked the CI who was currently in 160 Spring Street, Apt. 1B.  The CI informed me that Moscaguiri, LaPlaca and Latasha, later identified as Nicola Earle, were all in the apartment.  The CI told me Gaskins had already been picked up.  The CI said Gaskins left between 11:00 am and 12:00 pm.
>
>At approximately 3:00 pm, members of the Sheriff's Department and the New Jersey State Police joined the surveillance on 160 Spring Street.
>
>At approximately 5:50 pm, the gold Nissan Altima pulled into the Adams Street parking lot behind 160 Spring Street.  Gaskins exited the vehicle with a red bag and entered the rear entrance of 160 Spring Street.  A few moments later, a court authorized search warrant was executed on 160 Spring Street, Apt. 1B, Newton, New Jersey.

(Summary Investigation Report, attached as exhibit to plaintiff's Complaint).

The red bag or backpack handled by plaintiff was found during the search of the apartment with a container inside that had a false bottom.  Similar containers with false bottoms were found in the apartment with drugs in them.  A photo of plaintiff with the red backpack was taken during the surveillance on June 12, 2008.  (July 9, 2008 Probable cause hearing transcript).  Consequently, Gaskins was arrested.

Gaskins admits that his New Jersey state criminal proceedings are still pending. He seeks relief under § 1983 for the alleged constitutional violations.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2).

However, recently, the Supreme Court refined this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true,

6

violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

7

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint is plausible. Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, ___ F.3d ___, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly. Fowler, 2009 WL 2501662, *5. The Third Circuit now requires that a district

---

[2] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 2009 WL 2501662, *5.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.  SECTION 1983 ACTIONS

Gaskins brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

9

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.   ANALYSIS

A.   False Arrest Claim

First, this Court construes the allegations as asserting a claim of false arrest. A Section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures. Albright v. Oliver, 510 U.S. 266, 274 (1994). "An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983. In addition, 'where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.'" O'Conner v. City of Philadelphia, 233 Fed. Appx. 161, 164 (3d Cir. 2007)(citations omitted). See also Dowling v. City of

10

Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)(a false arrest is an arrest made without probable cause); Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)(where the police officer lacks probable cause to make an arrest, the arrestee has a Fourth Amendment claim for false imprisonment based on a detention pursuant to that arrest). Indeed, the United States Supreme Court recently noted that, "False arrest and false imprisonment overlap; the former is a species of the latter." Wallace v. Kato, 549 U.S. 384, 388 (2007).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling, 855 F.2d at 141. Thus, a defense to an unlawful arrest and false imprisonment claim is that the police officer defendants acted with probable cause. Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997)(a key element of a § 1983 unlawful arrest claim is that the police officer arrested the plaintiff without probable cause); Groman, 47 F.3d at 636 ("an arrest based on probable cause could not become the source of a [§ 1983] claim for false imprisonment"). To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." Lind v. Schmid, 67 N.J. 255, 262 (1975). "Probable cause . . .

11

requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (*quoting* Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).[3]

A § 1983 claim for false arrest typically accrues on the date of the plaintiff's arrest. See Wallace v. Kato, 549 U.S. 384 (2007); Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998); Rose v. Bartle, 871 F.2d 331, 348-51 (3d Cir. 1989).

Here, Gaskins does not allege facts sufficient to state a claim for false arrest or for false imprisonment pursuant to that arrest. To the contrary, he describes a course of investigation that includes tips from several confidential informants, several controlled drug buys by the informants for the police, personal observations by the officer affiant with respect to the police surveillance of the apartment, and a search of the apartment pursuant to a lawfully obtained search warrant that yielded controlled dangerous substances in the apartment where Gaskins

---

[3] A grand jury indictment is affirmative evidence of probable cause sufficient to defeat claims for malicious prosecution and false arrest under § 1983. Gatter v. Zappile, 67 F. Supp. 2d 515, 519 (E.D.Pa. 1999), aff'd, 225 F.3d 648 (3d Cir. 2000).

12

had been observed.[4]  Thus, this Court finds that the facts as alleged by Gaskins preceding his arrest are sufficient to establish probable cause for arrest.  As stated above, a grand jury indictment is affirmative evidence of probable cause sufficient to defeat a claim of false arrest under § 1983.  See Gatter, 67 F. Supp. 2d at 519.  Here, the state court found probable cause for the arrest in Gaskins' state criminal proceedings at his July 9, 2008 probable cause hearing.  Accordingly, as the allegations show probable cause for plaintiff's arrest, based on the police surveillance, confidential information, and a finding of probable cause by the state criminal court, this false arrest claim will be dismissed.[5]

B.  Entrapment

Gaskins also asserts a claim of entrapment by the police defendants.  However, such a claim does not assert a constitutional violation.  Entrapment may violate due process under the New Jersey Constitution, see State v. Johnson, 127 N.J. 458, 473, 606 A.2d 315 (1992), but the entrapment described by Gaskins here, that is, the participation of police in an unlawful drug sale, is not of a constitutional dimension.  See United States v. Russell, 411 U.S. 423, 433 (1973); DiBlasio v. City of

---

[4] This Court expresses no opinion as to whether the search complied with the Fourth Amendment or whether the evidence obtained from the search is admissible in the pending state criminal proceedings.  The Court also notes that plaintiff is not asserting an unlawful search and seizure claim in his Complaint.

[5] This Court, of course, expresses no opinion as to whether there is evidence sufficient to sustain a conviction.

13

New York, 102 F.3d 654, 656 (2nd Cir.1996)(entrapment involving sale of drugs to undercover police does not allege constitutional violation under § 1983); Jones v. Bombeck, 375 F.2d 737, 738 (3d Cir. 1967)("While entrapment may be a proper defense in a criminal action, a police officer's participation in such activity does not constitute a constitutional violation").  See also Doughty v. Comunale, 2009 WL 304463 *3 (D.N.J., Feb. 5, 2009).  As Gaskins' allegations do not assert violation of his constitutional rights, this claim will be dismissed for failure to state a claim upon which relief may be granted.

C.  Malicious Prosecution Claim

Gaskins also asserts a claim of malicious prosecution.  In a claim of malicious prosecution, as alleged here, Gaskins is required to show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding." Pittman v. Duffy, 240 Fed. App'x. 524, 526 (3d Cir. 2007)(quoting Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007)); see also Helmy v. City of Jersey City, 178 N.J. 183, 836 A.2d 802, 806 (N.J. 2003)(citing Lind v. Schmid, 67 N.J. 255, 337 A.2d 365, 368 (N.J. 1975).  "'Failure to prove any one of these ... elements denies the plaintiff a cause

of action for malicious prosecution.'" Wilson v. N.J. State Police, No. 04-1523, 2006 U.S. Dist. LEXIS 60514, *28, 2006 WL 2358349 (D.N.J. Aug. 15, 2006)(quoting Wiltz v. Middlesex County Office of the Prosecutor, No. 05-3915, 2006 U.S. Dist. LEXIS 46821, *24, 2006 WL 1966654 (D.N.J. July 12, 2006)).

    A plaintiff attempting to state a malicious prosecution claim must also allege that there was "'some deprivation of liberty consistent with the concept of seizure.'" Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998)(quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)); see Albright v. Oliver, 510 U.S. 266 (1994).  Ordinarily, the statute of limitations on a malicious prosecution claim begins to run on the date plaintiff receives a favorable termination of his prior criminal proceeding.  Heck v. Humphrey, 512 U.S. 477, 489 (1994).

    Here, it appears from the Complaint and the attachments provided by plaintiff that only one defendant, Det. N. Elmo, was involved in the investigation or preparation of the search warrant application.  There are no allegations in the Complaint to show that any of the other police defendants participated in the institution of the criminal action against Gaskins, an essential element of a claim for malicious prosecution.  Their only involvement was participation in the search of the apartment.  Accordingly, the Complaint fails to state a malicious prosecution claim against any of the other officers, and therefore, such claim must be dismissed with prejudice.

Further, as to the malicious prosecution claim against Detective Elmo, Gaskins has not alleged that his state criminal proceedings have been terminated in his favor, a necessary element of a malicious prosecution claim. Indeed, Gaskins' state criminal proceedings are still pending. Therefore, because the outcome of Gaskins' state criminal proceedings is not yet determined, any malicious prosecution claim he asserts against Det. Elmo will be dismissed without prejudice.

C. Racial Profiling Claim

Next, Gaskins asserts a claim of racial profiling and discrimination. "The Equal Protection Clause 'prohibits selective enforcement of the law based on considerations such as race.'" Thomas v. Independence Twp., 463 F.3d 285, 297 (3d Cir. 2006)(citing Whren v. United States, 517 U.S. 806, 813 (1996)). To make out an equal protection claim in the racial profiling context, a plaintiff must establish that the actions of law enforcement officials "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002)(citations omitted). To establish "discriminatory effect," a plaintiff must show that he is a member of a protected class and that he was treated differently from similarly situated individuals in an unprotected class. Id.[6]

---

[6] This Court does not construe the Complaint as asserting a claim of selective prosecution, which requires that a claimant meet the high burden of demonstrating that a prosecutorial policy

16

This Court finds no allegations from the Complaint sufficient to state a claim of racial profiling.  Indeed, the Complaint and its attachments reflect that the investigation and surveillance of the apartment in Newton, New Jersey that led to plaintiff's arrest were prompted by information from confidential informants concerning criminal (drug) activity at the apartment, and identification and/or description of the individuals involved.  This information led the detectives to personally observe and identify plaintiff as the object of the confidential informants' tips, through police surveillance of the apartment.  There are simply no allegations contained in the Complaint that suggest either a discriminatory motive or a discriminatory effect in the enforcement of the law with respect to Gaskins.  Therefore, this claim will be dismissed with prejudice.

---

had a discriminatory effect and that the decision to prosecute
was based on an impermissible motive such as race, religion, or
the exercise of constitutional rights.  To establish a
discriminatory effect in a race case, a claimant must show that
similarly situated individuals of a different race were not
prosecuted.  See United States v. Armstrong, 517 U.S. 456 (1996).

D.  State law Claims

The remaining allegations in the Complaint suggest state law tort claims, for example, allegations of libel, slander, and infliction of emotional distress.  Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim.

The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)(citations omitted).  As no such extraordinary circumstances appear to be present here, this Court will dismiss the state law claims without prejudice.

V.  CONCLUSION

Therefore, for the reasons set forth above, plaintiff's Fourth Amendment false arrest claim will be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  The Fourth Amendment malicious prosecution claim will be dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim at this time.  Further, plaintiff's racial profiling claim and claim of entrapment will be dismissed

18

with prejudice for failure to state a claim.  All state law claims will be dismissed without prejudice at this time. Finally, plaintiff's request for appointment of counsel (docket entry no. 3) will be denied as moot.

It does not appear that plaintiff could amend his Complaint at this time to state a viable claim.

An appropriate order follows.

s/William J. Martini

_____
WILLIAM J. MARTINI
United States District Judge

Dated: 12/2/09